Final case of the day is Vega v. New Forest Home Cemetery Mr. Beccara May it please the court. My name is Carlos Becerra and I represent the plaintiff appellant, Luis Vega, in this case. The district court erred in converting the defendant's 12B6 motion to dismiss into a motion for summary judgment and granting judgment to the defendants. Is there a lurking mootness issue here given New Forest's representation that it's willing to pay Mr. Vega what he is owed? Your Honor, the I mean, I know that wouldn't, or I take it it wouldn't include attorney's fees. And the Rule 68 offer of judgment that was made was only for the wages. It did not include damages, and it did not include attorney's fees, and it did not include costs to Mr. Vega for bringing this case. So there is no lurking issue with, in terms of Rule 68. What is undisputed, Your Honors, is that from the period of May 2010 to June 3rd of 2015, Mr. Vega worked for the cemetery. He earned, at the end of his time at the cemetery, he earned $14.74 an hour. He worked, the record shows that he worked 54 and a half hours during the last two week period of his time at the cemetery. And that the defendants have refused to pay him his owed wages. Throughout this time, the defendants have tried to find- Is that what this claim is for, the wages due under the collective bargaining agreement? No, Your Honor, they are for the wages owed to him as an employee of the cemetery. There is no need to look at the collective bargaining agreement. I'm asking this because there are two potential sources of wages. One is wages due by contract, collective bargaining agreement, you name it. The other is wages due by virtue of federal law, the Fair Labor Standards Act. Which of these is it, or are you making both claims? No, Your Honor, we are stating that because he was not paid any wages for this two week period. He is owed wages under the Fair Labor Standards Act. He is owed what he would have earned if the defendants had done what was correct, what was lawful, and paid him his wages. There's no need to look at the collective bargaining agreement in this case because what we're arguing is that he's owed these wages because he worked this time. The defendants have not denied ever throughout this case that he's owed wages. They have simply tried to find a justification for their unlawful acts. First, it relates to his ability to provide documentation that he has authorization to work. Then it's whether he grieved sufficiently under the collective bargaining agreement. Your Honor, the case in Barrington versus Arkansas Best Supreme Court case of 1981 says clearly that the FLSA has no exhaustion requirement. There's no, and a statutory claim under the FLSA can be brought in federal court. FLSA rights are non-waivable and can't be abridged by contract or other. You emphasize that in your brief, but an arbitration clause is not a waiver of substantive rights, or there would be no such thing as arbitration. The Supreme Court has said that even claims under the Securities Acts, which cannot be altered by contract, can nonetheless be arbitrated. That an agreement to arbitrate is not a forbidden waiver. So do you have a theory that doesn't depend on this waiver argument, which the Supreme Court has already rejected? Your Honor, my theory would be based on this court's holding in Joneitis versus Exelon, a 2008 case, that said in order for an employee to waive statutory rights, to not have to go under the arbitration- This is not a waiver of statutory rights. That's the holding that I was just mentioning to you, right? An agreement to arbitrate does not waive statutory rights. And I don't disagree with that point, Your Honor. What we're- So you need to make an argument that doesn't rely on this waiver theme. And the argument is, Your Honor, that rights under the Fair Labor Standards Act are not waived, first of all. And second of all, that a plaintiff has the ability to come to federal court in order to vindicate those rights under the Fair Labor Standards Act. That's just the waiver argument stated twice. Your brief cites 14 Penn Plaza. That's correct. I thought, maybe this is wrong, that the theme of your argument was simply that the collective bargaining agreement does not require arbitration of statutory claims. And that is exactly- It has nothing to do with waiver. That is absolutely correct, Your Honor. Because the arbitration clause in the collective bargaining agreement does not specifically enumerate that Fair Labor Standards Act claims have to be arbitrated. Mr. Vega could come to federal court to vindicate those FLSA rights. Your Honor, the defendants go to great pains in saying that there's no legal way to pay Mr. Vega. But in fact, their reference to the Immigration Reform and Control Act of 1986 shows that there is a way to pay Mr. Vega because the IRCA of 1986 and the FLSA work in tandem. The FLSA defines an employee as an individual employed by an employer. Here, Mr. Vega was an individual employed by an employer. He is entitled to his wages that are owed. The fact that he could not provide work authorization shows that he was not supposed to be hired in the first place. But once he was hired, the FLSA gave him rights to be paid. And that's what this case is all about. The ability of a plaintiff to vindicate his right to get paid for work he has already performed. If the court has no further questions, I reserve my time. Thank you. Certainly, counsel. Ms. Walsh. Good morning, Your Honors. Good morning. May it please the court. I'd like to address Your Honor's comment that isn't there mootness in this case. There's been several offers to pay Mr. Vega. In open court, Judge Norgal had asked me as a representative of the company whether or not we'd pay the amount owed. I assured him that we would. However, that offer was rejected by counsel. But has New Forest ever extended a truly make whole offer of relief? In other words, an offer that includes his attorney's fees or is the offer unlimited, is the offer limited to his unpaid wages? The offer made before Judge Norgal was for unpaid wages. In a separate hearing before the Illinois Department of Human Rights, there was negotiations, there was potential settlement. But I had asked the mediator, how am I to pay Mr. Vega legally? She said to use a falsified social security number, which I stated I could not, in good faith, ask my client to pay under a false social security card number that we knew, in fact, was false. So, the offer's completely off the table. Your Honor, to this day, I believe we owe Mr. Vega $803.33 in unpaid wages. However, I do not know how to pay him legally. That's why I made the offer to his attorney to pay him, which has been rejected. Also, we have asked Mr. Vega, at the time of his termination, to bring in some type of documentation so that we could pay him. To this day, we have never received such documentation. My offers of settlement, other than the offer of judgment, have been rejected repeatedly by counsel. Okay, just so I'm clear, the last offer, does that include attorney's fees and costs? When we were before mediation in the Illinois Department of Human Rights, there was a disputed offer to include wages, attorney's fees, and costs.  Now, the Illinois Department of Human Rights has dismissed the case for lack of substantial evidence. So, the case is no longer pending for the Illinois Department of Human Rights. So, the answer is no? Correct. Okay. Your Honor, as I- All right, let me ask you to turn to the question that I asked of your adversary, which is whether the collective bargaining agreement unmistakably applies to rights under the Fair Labor Standards Act. That's the standard of 14 Penn Plaza, unmistakably. And I notice that Vega's brief cites and relies on 14 Penn Plaza, and you don't even mention it. So, this is your opportunity to show that the collective bargaining agreement unmistakably covers federal statutes, such as the Fair Labor Standards Act. Your Honor, I respectfully would state there is no mention of the FLAS itself. However, there is a clause that it is any dispute regarding pay or hours or working conditions. Is there anything that refers to any federal statute? There is not. There is not. Is there any way that given the language of 14 Penn Plaza, this collective bargaining agreement can be construed as applicable to federal statutory rights as opposed to rights under the collective bargaining agreement itself? I believe that, I agree with you that there's no specific reference. Well, the whole point of requiring an unmistakable reference is to say that if the document refers to specific federal statutory rights, then it requires arbitration of those rights. And if it doesn't, it doesn't. And you've told me that this document doesn't. But I believe the court in McCoy versus McCall was clear that if there is a collective bargaining agreement in issue, and there is a way in which the employee can address his issues, that that is the favored procedure. Where do you find that in 14 Penn Plaza? I do not. That's the controlling authority in this case. That's our marching orders from the Supreme Court. And I believe the issue in Penn was, it was actually a case under the Age of Discrimination Employment Act, human rights law. So I would say that they were addressing separate laws that are an issue in this case. And they didn't say it was anything specific to the ADEA. The question was whether, under what circumstances, a collective bargaining agreement waives resort to the federal courts for a federal statutory claim. And in this particular... Which Vega is making. And in this particular collective bargaining agreement, I agree that there is no specific waiver. But I believe in Penn, he had gone through part of the grievance procedure prior to proceeding to federal court. If the court has no further questions, I'll rest my brief. Thank you. Certainly. Anything further, counsel? Nothing further, Your Honor. Okay, well, thank you very much. The case is taken under advisement, and the court will be in recess. It's getting hard.